## CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Theresa Y. Crawley

v.

Gregory R. Cox

### March 10, 1992

### Case No. CH91–179

By Judge William H. Ledbetter, Jr.

This case concerns the enforceability of a non-competition clause in a contract between two professionals.

### Pleadings and Status of Case

The complainant (Crawley) instituted this suit to enjoin the respondent (Cox) from engaging in the practice of dentistry in violation of certain provisions of the parties' written agreement dated January 16, 1990. In his answer, Cox admits that he signed the agreement but denies the enforceability of the non-competition covenant. Also, he has filed a cross-bill contending that Crawley has interfered or attempted to interfere with his arrangement to purchase a practice from another dentist in the Fredericksburg area.

The parties took depositions on December 10, 1991. On March 2, 1992, they appeared to argue Crawley's request for a temporary restraining order. They submitted transcripts of the depositions and admissions made under Rule 4:11. They also presented considerable testimony ore tenus. At the conclusion of the evidence, counsel agreed that the court had before it sufficient evidence to make a final adjudication on the merits. The court then denied the motion for a temporary restraining order and took the matter under advisement. The parties submitted memoranda on March 6, 1992. This opinion addresses the disputed issues.

### Factual Background

After graduating from MCV School of Dentistry and obtaining her

license, Crawley came to Fredericksburg in 1983. She purchased an established dental practice at The Pratt Clinic on Fall Hill Avenue. Since then, she has maintained a general practice there.

In January, 1990, after a period of negotiation, Cox, a recent graduate of the University of Oklahoma School of Dentistry, joined Crawley's practice. They signed a contract for a one-year period, subject to renewal. The contract provided that Cox was to "engage in the active practice of dentistry and render professional dental services to Crawley's patients." The patients were to remain Crawley's patients, and all management and billing would be done by Crawley. The contract set out the compensation that Cox would be paid in the performance of services under the arrangement.

Paragraph 9 of the contract provided that upon termination of the agreement, Cox would not engage in "any form of dental practice" within ten miles of Crawley's office for a period of two years.    In September of 1990, for reasons explained in her testimony, Crawley told Cox that his contract would not be renewed when it expired in January, 1991. She told him that he could leave anytime but that he could stay, if he wished, for the remainder of the contract period. Cox contends that he was fired. It is undisputed, however, that Cox remained until January 19, 1991.

Cox then left Crawley's practice and went to work with a dentist in West Point, Virginia. In September of that year, he returned to Fredericksburg and purchased another dentist's practice in Chatham Square Office Park. That office is less than ten miles from Crawley's office on Fall Hill Avenue.

On learning of Cox's return, Crawley notified him of her intention to enforce the non-competition covenant in their contract. Nevertheless, Cox acquired the dental practice at Chatham Square and began work there. This litigation ensued.

### Applicable Legal Principles

At early common law, covenants not to compete were void as against public policy. In those days, a person could not pursue a trade without being fully apprenticed. Once apprenticed, a covenant not to engage in that trade, especially in a non-mobile society, would effectively deny him the right to earn a livelihood and would make him a public charge. The rule continued for more than two centuries. *See* 54 Am. Jur. 2d, *Monopolies*, § 511.

Through a succession of decisions, the rule has been substantially modified so that today such a covenant, though basically in restraint of trade and contrary to free competition, will be enforced if supported by consideration, ancillary to certain types of lawful contracts, and reasonable under multifaceted tests fashioned by the courts. "That restrictive covenants of this character which reasonably protect the employer's business and are incident and ancillary to the contract of employment and limited as to area and duration are enforceable in equity is not open to question." *Worrie v. Boze*, 191 Va. 916 (1951).

In Virginia, reasonableness is determined by reference to three criteria: (1) whether the restraint, from the standpoint of the employer, is reasonable in the sense that it is no greater than necessary to protect the employer's legitimate business interest; (2) from the standpoint of the employee, whether the restraint is reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood; and (3) whether the restraint is reasonable from the standpoint of sound public policy. *Foti v. Cook*, 220 Va. 800 (1980).

Here, the duration of the non-competition covenant is two years. On its face, such a period is not unreasonable. *See, e.g., Meissel v. Finley*, 198 Va. 577 (1956) (five years); *National Homes Corp. v. Lester Industries, Inc.*, 404 F.2d 225 (4th Cir. 1968) (ten years); *Anno*, 41 A.L.R.2d 15 (1955). The territorial extent of the covenant is ten miles from Crawley's office on Fall Hill Avenue. On its face, the area covered by the restraint is not unreasonable.

Crawley testified that she presented the contract to Cox under the impression that the two-year duration and the ten-mile radius were fair and appropriate to "protect her interest," and Cox agreed to it. She pointed out that she had paid for the practice and had built it up over seven years; and that she did not want someone coming into her practice, cultivating patients, developing a reputation while treating her patients, and then leaving with the ability to compete immediately and in close proximity. She conceded that she had not specifically told the attorney who drafted the contract to use the two-year and ten-mile phrases. Based on her knowledge of similar agreements among dentists in the Fredericksburg area, including the one that she signed when she began her practice here, and contracts that she made with associates prior to Cox, she said that these restraints were

"standard" under the circumstances. As for the prohibition against engaging in "any form of dental practice," she contends that such a restriction is not overly broad because her license permits her to engage in a "general practice." Her practice includes, for example, cosmetic restoration dentistry and endodontics, as well as other procedures which are not normally referred to a specialist. Cox, too, is a general practitioner, whose license, experience, and present practice are co-extensive with those of Crawley. The scope of the prohibited activity is no greater than the scope of the work affiliation under the parties' contract.

Cox called as expert witnesses two members of the MCV School of Dentistry faculty. They are specialists in the field of "dental practice administration." Regarding the two-year time restraint, they testified that a typical non-competition covenant in a dentists' agreement would be co-extensive with the terms of the contract to which the covenant was attached. However, neither witness said that a two-year restraint, under the circumstances of this case, was in excess of any recognized standards in the field of dental practice administration or was otherwise inappropriate. As for the space restraint, the witnesses said that a typical covenant covered approximately five miles in a metropolitan area, more territory in a rural area. Again, neither witness opined that a ten-mile radius was excessive under any recognized standards in their field. Further, they acknowledged that they had no knowledge of time and space restraints in dentists' agreements in the Fredericksburg area. In fact, they seemed to concede that there are no "standards" other than the legal criteria applicable to noncompetition covenants in general, established by the courts. (Upon objection of Crawley, the court did not permit the witnesses to recite what they perceived to be the applicable legal principles or to give an opinion about the ultimate "reasonableness" of the covenant under consideration, for obvious reasons.)

Cox argues that the evidence is insufficient to show that the covenant is reasonable. He asserts that Crawley has the burden of proving precisely and with "objective" criteria why the time, space, and activity restraints in the covenant are appropriate. The court is of the opinion that Cox asks too much in insisting that Crawley produce definitive evidence to justify a two-year period rather than a one-year or three-year period, or to justify a ten-mile radius as opposed to

eight, five, or twenty miles. In none of the appellate decisions is there reference to evidence of such exactness and precision, or the need for it — presumably because such evidence would be impossible. No one can say with certainty whether one year would be sufficient to protect Crawley's legitimate business interest so that a year more than that is per se unreasonable. Similarly, no amount of statistical data could be accumulated to identify the exact territorial limit that should have been used in this or any other case involving professional practice.

The parties agree that the ten-mile radius takes in the City of Fredericksburg and portions of Spotsylvania and Stafford counties. It follows, then, that the restricted area does *not* include other portions of Spotsylvania and Stafford counties or other parts of the Fredericksburg area within which Cox could practice.

Considering all of the facts and circumstances of the case, the court is of the opinion that the covenant is reasonable.

Next, Cox argues that the covenant is not enforceable because it is not ancillary to an employment contract. This argument is premised upon his contention that the contract creates an independent contractor relationship rather than an employment relationship. The court does not accept the premise. Although Cox is identified in the contract as an "independent contractor," Crawley expressly reserved the right to "control, direct, and supervise the duties performed, the manner of performing such duties, and the time for performing such duties . . . ." All patients remained Crawley's "patients of record," and she was to control the supplies, billing, and personnel decisions. The power to control, whether exercised or potential, is the key test in determining whether someone is an employee of another. *See* 12B M.J., *Master and Servant*, sects. 3–7. This contract, read as a whole, seems to pass that test. Nevertheless, a determination of that question is not essential to a resolution of the issue Cox raises. Non-competition covenants do not have to be incident to employment contracts. Such covenants are found in other lawful contracts such as partnership agreements, shareholders' agreements, buy-sale contracts, and service contracts. When Crawley associated Cox in her dental practice, whether as an employee or independent contract, she had a proper interest in protecting her practice in the event of Cox's leaving.

Finally, Cox asserts that the covenant is not enforceable because he was terminated without cause. Cox was not terminated. Instead,

the contract was not renewed. He continued to work with Crawley after their conversation in September of 1990 through the remainder of the contract term.

## Decision

For the reasons explained, the court is of the opinion that the contract between Crawley and Cox was a lawful contract, supported by consideration to which a non-competition covenant may be properly appended; and the court finds further that the covenant in this case, under the circumstances, is reasonable.

Cox's cross-bill, alleging Crawley's interference with his new practice, will be dismissed. The only "interference" about which there was evidence relates to Crawley's effort to enforce the non-competition covenant.

Accordingly, Cox will be enjoined from engaging the practice of dentistry within ten miles of Crawley's office through January 18, 1993.